IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  ) | CR 07-1460-TUC-FRZ (HCE) |
| Plaintiff,  ) | **REPORT & RECOMMENDATION** |
| vs.  ) | |
| Jorge Luis Nieblas-Cordova,  ) | |
| Defendant.  ) | |

Defendant Jorge Luis Nieblas-Cordova (hereinafter "Defendant") filed a Motion To Suppress Evidence: No Reasonable Suspicion (Doc. No. 20) to suppress 67.5 kilograms of cocaine obtained as a result of an alleged unlawful detention and arrest of Defendant and a search of his vehicle. Defendant's Motion came on for hearing on June 24 and July 17, 2008.[1]

For the reasons stated herein, the Magistrate Judge recommends that the District Court grant Defendant's Motion to Suppress Evidence of 67.5 kilograms of cocaine seized from Defendant's vehicle.

---

[1] The transcript of the June 24, 2008 hearing, wherein Patrolman Robert Telles and Private Investigator James W. Driscoll testified, was filed on July 1, 2008 (Doc. No. 53). The transcript of the July 17, 2008 hearing, wherein Traffic Reconstructionist Charles Timothy Bright testified, was filed on August 18, 2008 (Doc. No. 63).

1  **I. PROCEDURAL AND FACTUAL HISTORY**

2      **A.    Charge**

3      Defendant was charged by indictment on August 15, 2007 with violating Title 21
4  U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii)(II) in that on or about July 19, 2007, at or near
5  Marana, Arizona, in the District of Arizona he knowingly and intentionally possessed with
6  the intent to distribute approximately 67 kilograms of cocaine. (Doc. No. 6)

7      **B.    Testimony**

8          **1.    Government's Witness**

9      On July 19, 2007 Highway Patrolman Robert Telles (hereinafter "Patrolman Telles"),
10 a Department of Public Safety officer for ten years, stopped Defendant on Interstate 10
11 (hereinafter "I-10") near the Marana Road exit.(Patrolman Telles Testimony (Doc. No. 53)
12 pp. 5-6, 9 (hereinafter "Telles p.___")).

13     Patrolman Telles' law enforcement experience is extensive: prior to employment as
14 a highway patrolman for the Department of Public Safety (hereinafter "DPS") he was a
15 Sandoval County Sheriff's Deputy in New Mexico for four and one-half years and prior to
16 that, he was a municipal police officer for the City of Belen, New Mexico. (Telles pp. 6-7)
17 Patrolman Telles has training in the traffic laws of the State of Arizona.(*Id.* at p. 7) He has
18 had training to visually recognize vehicle speeds on the highway and opines he can
19 approximate speeds within 5 miles per hour. (*Id.* at pp. 7-8) As a highway patrolman he is
20 on the Criminal Interdiction K-9 squad which interdicts, among other things, drug smuggling
21 on the Arizona highways. (*Id.* at p. 6).

22     On July 19, 2007 Patrolman Telles was proceeding westbound on I-10 near milepost
23 235-Marana Road exit traveling 60 to 65 miles per hour in the right-hand lane when he
24 observed, by use of his rearview mirrors, Defendant approaching from behind in the left-hand
25 lane a quarter of a mile away. (*Id.* at pp. 9, 24) Defendant, driving a white 2002 Oldsmobile
26 Bravada sport utility vehicle, was approaching at approximately 75 miles per hour then
27 suddenly reduced speed. (*Id.* at pp. 9-10) Patrolman Telles does not recall how far behind
28 him Defendant was when Defendant slowed. (*Id.* at p. 10) There was a blue passenger

vehicle behind Defendant's vehicle. (*Id.*) In Patrolman Telles' sixteen years of work in law enforcement he has observed vehicles slow down when they approach a law enforcement vehicle. (*Id.*) Defendant's slowing was "a little bit different" in that "[Defendant] stayed behind [him] for longer that what [he] believe[s] the innocent motoring public would have done." (*Id.* at p. 11) Patrolman Telles' observation of "innocent motoring public" behavior is:

> They'll slow down briefly. I can see their hands rise as I'm watching their movements in my mirror to–as if to check the speedometer, to see how fast they're going. Once they do that, they'll then proceed at a normal pace passed [sic] me using the left lane.

(*Id.*)

Defendant was not observed by Patrolman Telles conforming to this usual behavior. (*Id.* at p.11) Patrolman Telles, with Defendant behind and to his left, traveled for approximately three-quarters of a mile. While driving that three-quarter mile distance, Defendant's speed was approximately 60 to 65 miles per hour and Patrolman Telles "slowed down a little bit more..." at which time Defendant reached, overtook, and passed him. (*Id.* at pp. 11-12) Patrolman Telles then entered Defendant's vehicle license plate numbers into his patrol vehicle computer and also observed Defendant's body behavior. (*Id.* at p.11).(*Id.* at pp. 11-13) Patrolman Telles does not know when Defendant moved into the right-hand lane in front of him.(*Id.* at p. 13) Patrolman Telles activated his emergency lights and stopped Defendant at milepost 233. (*Id.* at pp. 14, 21).

Patrolman Telles had observed Defendant for approximately two minutes traveling 60 to 65 miles per hour. (*Id.* at p. 21) The posted speed limit is 75 miles per hour. (*Id.*) Patrolman Telles agrees with Defendant that:

> Q. [Defense counsel] Okay. And its fair to say that this is–this is somewhat your modus operandi when you work, is that you like to go under the speed limit on the highway to see if you can see if somebody commits a violation of law when they overtake your vehicle. You've done this before?
> A. [Witness] Yes, Ma'am, I have done it before.

- 3 -

1   (*Id.* at pp. 23-24).[2]

2   Any numerical references by Patrolman Telles in his report are estimations to refresh
3   his memory. (*Id.* at p. 28) Approximately 30 seconds transpired from when Defendant
4   overtook Patrolman Telles to when emergency lights were activated to stop Defendant. (*Id.*
5   at pp. 29-30) When emergency equipment is activated a camera on the dashboard of
6   Patrolman Telles' vehicle is activated as well. (*Id.* at p. 30) The video of the stop reveals that
7   7 seconds after the camera was activated a blue vehicle passed in the right-hand lane and 2
8   seconds later a vehicle passed in the left-hand lane. (*Id.* at pp. 37-38) Patrolman Telles does
9   not believe the blue vehicle traveling in the right-hand lane is the same blue vehicle first seen
10  behind Defendant.(*Id.* at p. 41) Although Patrolman Telles did not note in his report which
11  lane the blue vehicle was traveling in while behind Defendant, (*Id.* at p. 35), it is his
12  recollection that it was in the left-hand lane behind Defendant. (*Id.* at p. 41) Patrolman Telles
13  does not know the distance between the blue vehicle and Defendant's vehicle, (*Id.* at p. 44),
14  and was not concerned with whether the blue vehicle was following Defendant's vehicle too
15  closely:

> Q. [Defense counsel] Okay. You didn't have a concern that the blue passenger vehicle was following too closely, correct?
> A. [Witness] No, ma'am, I did not.
> Q. Because that would have been a traffic violation if someone was following too closely?
> A. Yes, ma'am.

(*Id.*).

---

[2]The Court: All right. And why were you going 60 or 65?
 The Witness: I stay in the right lane and let faster traffic pass me while in the left lane, and I look for violations of–I look for equipment violations, registration violations, and other types of violations.
The Court: Well, the speed limit is 75 miles per hour?
The Witness: Yes, Your Honor.
The Court: And so the reason for going 60 to 65 in the 75 mile per hour speed limit area is to–is it also to see what vehicles' reactions are going to be to you?
The Witness: No, Your Honor. It's to check vehicles for registration violations and equipment violations. Other violations.
(Telles p. 52).

- 4 -

1    The basis for Patrolman Telles' stop of Defendant is that Defendant committed the traffic violation of traveling slower than the speed limit of 75 miles per hour in the left-hand lane with one car behind him and was "impeding the normal flow of traffic which would be the blue tra– the blue passenger car" and consequently, failing to move into the right hand lane. (*Id.* at pp. 14, 16, 46)  Patrolman Telles issued warnings to Defendant for the aforesaid violations. (*Id.* at pp. 15-16) Patrolman Telles testified that a driver, in gauging proper speed regardless of the speed limit, should consider road construction, weather, and other traffic inclusive of law enforcement vehicles driving slower in front of that driver. (*Id.* at p. 53).

2.    Defendant's Witnesses

a.    James W. Driscoll

James W. Driscoll, a self-employed private investigator testified on behalf of Defendant. (James W. Driscoll Testimony (Doc. No. 53), p. 60 (hereinafter "Driscoll p.__) Private Investigator Driscoll (hereinafter "P.I. Driscoll") was employed by the Tucson Police Department for nineteen years after working as a law enforcement officer in Texas. (*Id.* at p.61) P.I. Driscoll was in the Tucson Police Department's Operations Division South for five years wherein he investigated traffic accidents, issued traffic citations, and conducted criminal investigations. (*Id.*)  He was later promoted to the rank of sergeant wherein he field trained other sergeants and supervised squads which investigated traffic accidents, issued traffic citations, and conducted criminal investigation. (Id.)

P.I. Driscoll testified that the posted speed limit is the prima facie speed limit that the Department of Highways deems safe and reasonable to travel and is not to be exceeded. (*Id.* at p. 63) Nothing in the traffic laws requires that one drive the speed limit and there is nothing unlawful about driving below the speed limit unless violating other laws. (*Id.*) P.I. Driscoll reviewed A.R.S. § 28-721(b) and opined that if one is traveling slower than the speed limit that driver must stay in the right-hand lane unless overtaking or passing another vehicle in which case it is permissible to travel in the left-hand lane. (*Id.* at p. 64) In traveling in the left-hand lane, there is no requirement that the driver overtake and pass a vehicle within a set amount of time, i.e. a "timely pass." (*Id.* at p. 66) The pass of another

- 5 -

1  vehicle must, however, be done in a safe manner. (Id.) P.I. Driscoll noted that Patrolman
2  Telles' report indicated that Defendant did not make a "timely pass" and impeded traffic.
3  (*Id.*).

4  P.I. Driscoll reviewed A.R.S. §28-704, the impeding traffic statue, opining that such
5  statute requires that a driver not impede or block the normal flow of traffic but it does not
6  define what "normal flow of traffic" is. (*Id.* at p. 67) This statute read in conjunction with
7  A.R.S. §28-721, in his opinion, allows Defendant to pass a slower-driven vehicle, i.e.,
8  Patrolman Telles, in a safe manner. (*Id.* at pp. 67-68) P.I. Driscoll opines that A.R.S. §28-
9  704 requires a driver in the left-hand lane to move to the right-hand lane if there are five or
10 more vehicles behind such driver so that they may pass. (*Id.* at p.68) P.I. Driscoll testified
11 that one vehicle in this instance behind Defendant, was not impeded because both were in
12 the left-hand lane traveling the same speed overtaking a slower-moving vehicle, i.e.,
13 Patrolman Telles. (*Id.* at p. 69).

14 P.I. Driscoll is of the opinion that I-10 between Tucson and Phoenix is a good
15 example of "normal and reasonable" movement of traffic that slows and speeds up due to
16 volume of traffic construction, traffic stops, and circumstances on the roadway. (*Id.* at p. 70)
17 P.I. Driscoll opines that once a driver makes a safe pass in the left-hand lane, that driver
18 should, as Defendant herein did, move into the right-hand lane to allow vehicles that follow
19 to pass as well. (*Id.* at p.71).

20 Based upon P.I. Driscoll's personal and professional experience everyone slows down
21 before passing a marked patrol vehicle questioning their own speed, the speed limit in the
22 area, or "just [not wanting to] blow by a marked police car." (*Id.*)

23       b.     Charles Timothy Bright

24 Charles Timothy Bright also testified on behalf of Defendant. Witness Bright is the
25 proprietor of Bright's Vehicle Dynamics which conducts work with non-collision vehicle
26 movements and auto accident reconstruction. He previously worked for the Tucson Police
27 Department for twelve and one-half years. His background, training and education is
28

- 6 -

1  extensive. (Charles T. Bright Testimony (Doc. No. 63), pp. 27-30, (hereinafter "Bright p.
2  __"))

3  Witness Bright testified that because Defendant was driving faster than Patrolman
4  Telles, Defendant in a matter of three quarters of a mile, caught up to Patrolman Telles and
5  overtook and passed him. (Bright pp. 43, 47, 75) Witness Bright also testified that
6  Patrolman Telles proffered no testimony that, once Defendant overtook and passed him,
7  Defendant changed to the right-hand lane unsafely. (*Id.* at p. 48) Witness Bright testified that
8  the blue vehicle that passed seven seconds after the camera activates to film Defendant's
9  stop, was not impeded. (*Id.* at p. 91) Witness Bright testified that the blue passenger vehicle
10 referenced by Patrolman Telles as having followed Defendant, based on Defendant's speed,
11 would not have been outside the camera's view. (*Id.* at p. 80) Such vehicle could not have
12 been impeded by Defendant's vehicle. (*Id.* at p.67).

13 Witness Bright, like Patrolman Telles and P.I. Driscoll, also testified that a driver
14 following or passing a law enforcement vehicle tends to drive more cautiously. (*Id.* at p.56).

15 **II. LAW AND DISCUSSION**

16 The Fourth Amendment's protection against unreasonable searches and seizures
17 extends to brief investigatory stops of persons or vehicles shy of traditional arrest. *Terry v.*
18 *Ohio*, 392 U.S. 1, 9 (1968). Such a stop, even for a brief period, constitutes a "seizure" of a
19 "person" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S.
20 806, 809-810 (1996). Although an officer is permitted to conduct a pretextual stop as a means
21 to uncover other criminal activity, the officer must reasonably suspect a traffic law violation.
22 *Id.* at 812-813. The decision to make a traffic stop is reasonable "where the police have
23 *probable cause* to believe that a traffic violation has occurred." *Id.* at 810 (emphasis added).

24 The Government herein maintains that Patrolman Telles observed Defendant commit
25 a traffic violation. (Government's Motion To Summarily Dismiss, Or In The Alternative,
26 Opposition to Defendant's Motion To Suppress, p. 3) (Doc. No. 23). It is one thing for law
27 enforcement to *observe* a vehicle being driven in violation of traffic laws. *United States v.*
28 *Chavez-Valenzuela*, 268 F.3d 719, 723-724 (9th Cir. 2001), *amended* 279 F.3d 1062 (2002),

*overruled on other grounds as discussed in United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007); *United States v. Colin*, 314 F.3d 439 442 (9th Cir. 2002)("Officers are encouraged to draw upon their own specialized training and experience in *assessing* the 'totality of the circumstances.'") (*citing United States v. Arvizu*,534 U.S. 266, 272-275 (2002) (emphasis added). It is quite another thing for law enforcement to create that which it deems suspect:

> Certainly, an agent cannot create a situation which amounts to a dangerous condition, observe the driver react appropriately, and then base reasonable suspicion on the reaction because it *somewhat* comports with "suspicious behavior."

*United States v. Sigmond-Ballesteros,* 285 F.3d 1117, 1124 (9th Cir. 2002) (emphasis added). Moreover, Patrolman Telles' expectation that Defendant must comport to *his* standard of "innocent motoring public behavior" is unreasonable, not credible and does not contribute to the reasonable suspicion calculus.

Herein, Patrolman Telles created the alleged traffic violations circumstance to justify his stop of Defendant. Patrolman Telles purposefully drove 60 to 65 miles per hour in a 75 mile per hour zone on I-10. His ostensible reason was to look for "equipment violations, registration violations, and other types of violations." (Telles p. 52). However, the alleged traffic violations are belied by the written warnings he issued to Defendant for violating A.R.S. §§ 28-704 and 28-721. The very wording of the statutes invoked by Patrolman Telles does not support his testimony:

> A.R.S. §28-704 states in pertinent part:
>
> A. A person shall not drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic   *except when reduced speed is necessary for safe operation* or in compliance with law.
>
> \*\*\*
>
> C. If a person is driving a vehicle at a speed less than the normal flow of traffic at the particular time and place on a two-lane highway where passing is unsafe, *and if five or more vehicles are formed in a line behind the vehicle,* the person shall turn the vehicle off the roadway....

A.R.S. § 28-704(A), and (C) (emphasis added).

- 8 -

A vehicle traveling ahead of other vehicles on an interstate will be the first to observe any debris on the roadway; other vehicles ahead traveling slowly; or disabled vehicles or pedestrians in the emergency lane. It is not unreasonable for a vehicle nearing a slower traveling vehicle in the right-hand lane to reduce speed deferring to that vehicle's better vantage. Even more so when the vehicle in front is a law enforcement vehicle cloaked in an unstated presumption of proper driving behavior. Herein, Defendant's precautionary reduction of speed in turn gave notice to vehicles following him regarding potential hazards ahead. As Patrolman Telles testified:

> The Court: What kind of factors should a driver take into consideration in gauging what the proper speed to drive is at every time [sic] *regardless of whatever the speed limit is*?
> The Witness: The traffic conditions such as road construction, weather, *other–other traffic around.*
> The Court: *Perhaps vehicles in front of-in front of another vehicle to see whether they're driving the speed limit or going slower would you say*?
> The Witness: Yes, Your Honor.
> The Court: All right. *And that would include you.*
> The Witness: *Yes, Your Honor.*

(Telles pp. 52-53)(emphasis added). Witness Bright also testified:

> I'm thinking that since you're following DPS, or you're passing DPS or any law enforcement vehicle, everybody tends to be much more cautious and do everything in a much more cautious manner...."

(Bright p. 56). Moreover, P.I. Driscoll testified:

> In--in my personal and professional experience everybody slows down before they pass a marked patrol car. You begin to question what's the speed limit in this area,...did I miss a sign, and then of course you don't want to just blow by a marked police car.

(Driscoll, p. 71) When Defendant reduced speed as he approached Patrolman Telles driving 60 to 65 miles per hour in the right-hand lane he was in compliance with Arizona traffic laws which require that a driver take into account actual as well as potential road hazards:

> A. A person shall not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the circumstances, *conditions and actual and potential hazards then existing.* A person shall control the speed of a vehicle as necessary to avoid colliding with any object, person, vehicle or other conveyance on, entering or adjacent to the highway in compliance with legal

> requirements and *the duty of all persons to exercise reasonable care for the protection of others.*
>
> \*\*\*
>
> D. The maximum speed ...is reduced to the speed that is reasonable and prudent *under the conditions and with regard to the actual and potential hazards then existing, ....*

A.R.S. §28-701(A) and (D) (emphasis added). Defendant's preoccupation with Patrolman Telles was a reasonable and understandable natural reaction and as such insufficient to justify an investigatory stop. *See United States v. Jimenez*, 173 F.3d 752, 755 (9th Cir. 1999); *United States v. Garcia-Camacho*, 53 F.3d 244, 249 (9th Cir. 1995); *United States v. Robert L.*, 874 F.3d 701, 703 (9th Cir. 1989). Defendant's preoccupation was undoubtedly generated by Patrolman Telles' own driving behavior. *See Sigmond-Ballesteros,* 285 F.3d at 1124. Common sense and experience holds that Defendant's reduction of speed in this instance was an exercise in reasonable care and regard for conditions and any actual or potential hazards which could have arisen.

Patrolman Telles noted a blue passenger car behind Defendant's vehicle when Defendant first reduced speed in the left-hand lane. (Telles p. 10) After Patrolman Telles activated his emergency equipment, the video camera on his vehicle's dashboard activated and filmed two blue vehicles, seven and nine seconds later, passing the situs of Defendant's stop. (Bright p. 32) Per Witness Bright's calculations, neither of the blue vehicles were following Defendant's vehicle too closely as a result of his having slowed down. (Bright pp. 32-39) Defendant's reduced speed did not impede the presumptive "five or more vehicles...formed in a line behind [his] vehicle" required under A.R.S. §28-704(C). Moreover, Defendant's reduced speed was an objectively reasonable response to the less than "normal and reasonable movement of traffic" created by Patrolman Telles and thus was proper and correct driving under A.R.S. §28-704(A).

Patrolman Telles issued a written warning to Defendant suggesting that because Defendant slowed and a blue passenger vehicle was behind him at some unknown distance,

1  (Telles p. 44), Defendant should have moved into the right-hand lane pursuant to A.R.S. §28-
2  721. Such statute states in pertinent part:

> A. On all roadways of sufficient width, a person shall drive a vehicle on the right half of the roadway except as follows:
> 1. When overtaking and passing another vehicle proceeding in the same direction....
>
> \*\*\*
>
> B. On all roadways, a person driving a vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall drive the vehicle in the right-hand lane then available for traffic...*except when overtaking and passing another vehicle proceeding in the same direction....*

9  A.R.S. §28-721(A)(1) and (B)(emphasis added). Patrolman Telles was traveling 60 to 65
10  miles per hour when he first observed Defendant reduce his speed. Patrolman Telles then in
11  turn reduced his speed. (Telles p. 11) By necessity Defendant was traveling faster in the left-
12  hand lane than Patrolman Telles in the right-hand lane such that approximately two minutes
13  and three quarters of a mile later (Telles pp. 11, 21), Defendant overtook and passed him in
14  compliance with A.R.S. §28-721.

15  **III. CONCLUSION**

16  This Court can only conclude that Patrolman Telles' stop of Defendant was pretextual
17  and lacking in any "probable cause to believe that a traffic violation occurred." *Whren*, 517
18  U.S. at 810.

> In determining whether a stop was proper, we look to the events preceding the stop, then examine "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to a reasonable suspicion or to probable cause."

*Chavez-Valenzuela*, 268 F.3d at 723 (*quoting Ornelas v. United States*, 517 U.S. 690, 696 (1996)), *amended* 279 F.3d 1062 (9th Cir. 2002), *overruled on other grounds as discussed in Mendez,* 476 F.3d at 1080.  Herein, Patrolman Telles is assigned to the K-9 squad in the Tucson area for DPS. (Telles p. 6). His duties on the K-9 squad are to interdict felony crimes on the highway.(*Id.*) These crimes include "warrants and drug smuggling, currency smuggling, stolen vehicles, crimes in progress such as people eluding [sic] for armed robbery and things of that nature."(*Id.*) Conceivably other violations could include equipment and

registration violations. (Telles p. 52) Observing a lawfully-driven 2002 white SUV reduce speed suddenly in reaction to his slower-moving presence may, at best, have provided Patrolman Telles with a hunch of criminal activity. "A hunch, however, is not a substitute for the necessary specific, articulable facts required to justify a Fourth Amendment intrusion." *United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000) Herein, the mere observation of Defendant's reduction of speed in compliance with statutory requirements does not objectively and reasonably give rise to "the necessary, specific, articulable facts required to justify a Fourth Amendment intrusion." *Id.* Lacking any specific, articulable facts that Defendant was involved in criminal activity, Patrolman Telles nonetheless stopped Defendant and utilized his K-9 in an attempt to discover drugs. Once finding drugs in Defendant's vehicle, Patrolman Telles invoked inapplicable traffic laws to bootstrap nonexistent probable cause for his pretextual stop. However, the law is clear that to conduct a pretextual stop, the officer must reasonably suspect a traffic law violation. *Whren,* 517 U.S. at 812-813. Neither Patrolman Telles' own testimony regarding his observations of alleged traffic offenses, nor P.I. Driscoll's and Witness Bright's testimony, nor the law supports a finding of probable cause to justify the pretextual stop of Defendant. *See United States v. Caseres*, 533 F.3d 1064, 1069 (9th Cir. 2008)("Here there is insufficient evidence in the record to find that any other vehicles would have been affected by [defendant's failure to signal before making a turn]....").

> Because most people are not such paragons of driving skill and virtue that they consistently adhere to each one of the complex laws relating to the operation of motor vehicles, there are many opportunities to stop targeted vehicles....But those opportunities are not limitless. Suspicions must be reasonable, and they cannot be if they are not sufficient to cause an officer to believe that the driver has done something illegal.
> If an officer simply does not know the law, and makes a stop based upon objective facts that cannot constitute a violation, his suspicions cannot be reasonable. The chimera created by his imaginings cannot be used against the driver.

*United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002).

## IV.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court grant Defendant's Motion to Suppress Statements for Miranda Violation and as Involuntary (Doc. No. 20).

Pursuant to 28 U.S.C. §636(b) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation.  If objections are filed, the parties should use the following case number: **CR 07-1460-TUC-FRZ**.

Failure to file objections in accordance with Fed.R.Cr.P. 59 will result in waiver of the right to review.

DATED this 5th day of September, 2008.

_____
Héctor C. Estrada
United States Magistrate Judge